

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**RALPH M. SMITH,**

      Plaintiff,

v.

Civil Action No. **3:13CV533**

**MAJOR PEGRAM,**

      Defendant.

## MEMORANDUM OPINION

Ralph M. Smith, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1]  Smith contends that Defendant Pegram subjected him to conditions of confinement that violated Smith's rights under the Eighth Amendment.[2]  Defendant Pegram has filed a Motion for Summary Judgment.  For the reasons stated below, the Court will GRANT the Motion for Summary Judgment.

## I.  SUMMARY OF ALLEGATIONS

The sum of Smith's allegations is as follows:[3]

> Defendant, Major Pegram meaningfully denied me access to the showers and cleaning supplies.  I was subject to filthy cell conditions for long periods of time.  My water was turned off, and I could not wash my hands before eating.  Deprivation of basic sanitation is a violation of my (8th) Eighth Amendment

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[3] The Court corrects the capitalization in quotations from Smith's Complaint.

rights of the Constitution, which prohibits cruel and unusual punishment. I could not brush my teeth for long periods of time, and I'm sick because of these violations. There is [a] record of this complaint 8-23-2012, to the 6th Judicial District, Region #3 Magistrate, Mr. Robert C. Wrenn. No offender shall be subject to personal injury, and unsanitary conditions. These harsh conditions has [sic] made me very sick over a few years. I cannot possibly comply with hygiene standards, because of these administrative sactions [sic], which is [a] violation of my rights to a safe environment.

(Compl. 5, ECF No. 1.) Smith demands monetary damages. (*Id.* at 6.)

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "'[T]here is a

preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the *onus* of proof is imposed.'" *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of her Motion for Summary Judgment, Defendant Pegram submitted, *inter alia*: (1) her own Declaration (Mem. Supp. Mot. Summ. J. Ex. 1 ("Pegram Decl."), ECF No. 24-1); the Declaration of Lieutenant Brandon Temple (*id.* Ex. 2 ("Temple Decl."), ECF No. 24-2); the record of Smith's housing assignment at the Southside Regional Jail ("Jail") (Temple Decl. Ex. A); the Jail Inmate Handbook (Temple Decl. Ex. E ("Inmate Handbook")); records of Smith's Indigent Care Package Requests (Temple Decl. Ex. G); shower and cleaning records for Smith's cell (Temple Decl. Ex. K); the Declaration of Brenda Justice, a nurse at the Jail (Mem. Supp. Mot. Summ. J. Ex. 3 ("Justice Decl."), ECF No. 24-4); and the Jail Medical Department's record of the weekly medical exams of inmates housed in segregation (Justice Decl. Ex. A).

Smith responded by submitting a notarized, but unsworn memorandum of law. (ECF No. 25.) This response fails to constitute admissible evidence for two reasons. First, the Court previously warned Smith that "any verified allegations must be set forth in a separate document titled 'Affidavit' or 'Sworn Statement," and reflect that the sworn statements of fact are made on personal knowledge . . . ." (ECF No. 6, at 2.) Second, although Smith signed his Response to the Motion for Summary Judgment before a notary, there is no indication that the notary administered an oath. (Resp. 4 (as paginated by CM/ECF).) Rather, the notary merely acknowledged that the documents were signed in the presence of the notary. "'There is a marked

3

difference between acknowledging a signature and signing a document under oath."" *McCoy v. Robinson*, No. 3:08CV555, 2010 WL 3735128, at *2 n.3 (E.D. Va. Sept. 22, 2010) (quoting *Wisniewski v. Johnson*, 286 S.E.2d 223, 224 (Va. 1982)).[4] Smith's failure to submit admissible evidence permits the Court to rely solely on the submissions of Defendant Pegram in deciding the Motion for Summary Judgment.

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of Smith.

### III.   PERTINENT UNDISPUTED FACTS

Smith arrived at the Jail on April 29, 2010 and left the Jail on March 4, 2013. (Temple Decl. ¶¶ 18–19.) Upon his admission to the Jail, Smith was issued, *inter alia*, a blanket, 2 sheets, washcloth, towel, two uniforms, and the Inmate Handbook. (Temple Decl. Ex. B, at 1.) Smith was provided with appropriate laundry services for his blanket, sheet, washcloth, towel, and uniforms. (Temple Decl. ¶ 29.) Inmates at the Jail are required to, *inter alia*, bathe at least twice a week with soap and hot water and keep their cells and uniforms clean. (Inmate Handbook 1.)

"Beginning on July 5, 2012 and through his release on March 4, 2013, Smith was held in cells that are considered segregation units at [the Jail]. Smith was held in cell SP110 from July 5 through August 30, 2012. Smith was held in cell HA101 from August 30 through September 26, 2012. Smith was held in cell HA102 from September 26, 2012 through March 4, 2013." (Temple Decl. ¶ 25 (citation omitted).)

---

[4] "'An acknowledgment merely verifies that the person named executed the document in question. By swearing to a document, on the other hand, one vouches that the contents of the writing are true. A person who swears falsely may be guilty of a felony.'" *McCoy*, 2010 WL 3735128, at *2 n.3 (quoting *Wisniewski*, 286 S.E.2d at 224).

The segregation cells hold only a single inmate. (*Id.* ¶ 26.) Each of Smith's segregation

cells had its own toilet and sink. (*Id.* ¶ 27.) Additionally,

> Mr. Smith was able to use the toilet and sink in his segregation cells at any time. The sink included running water and he could brush his teeth, wash his hands, or wash his face/body with a wash cloth at any time he desired to do so. There are no records indicating that Smith's sinks did not work, did not work intermittently, or were not working for long periods of time.

*Id.*

> While in segregation,

> Mr. Smith had periodic access to a shower facility. . . . Mr. Smith was required to shower twice weekly. Normally he had access to a shower each day and, if he wanted to do so, could shower daily. The showers for each of [the] segregation cells was located nearby his cell. Guards opened the door to Mr. Smith's cell, and this allowed him out of his individual cell and provided him access to the shower. Even during a shower he would have been kept segregated and kept separate from other inmates.

(*Id.* ¶ 30.)

"Mr. Smith had access to personal hygiene and cleaning supplies from the commissary.

He could either purchase these supplies or, if he was indigent, they were provided

to him. . . . [I]f Smith had money in his jail account . . . , he could purchase supplies from [the

Jail's] commissary including deodorant, soap, toothpaste, and a toothbrush." (*Id.* ¶ 33.) Inmates

who are indigent may request an Indigent Care Package from the Jail. (*Id.* ¶ 34.) The indigent

kit contains: 1 security pen; 5 plain envelopes; 5 pieces of paper; 1 small deodorant; 1 large bar

of soap; 1 toothbrush; 1 small tube of toothpaste; 1 container of shampoo; and 1 container of

baby lotion. (*See, e.g.*, Temple Decl. Ex. G.)

In 2012, Mr. Smith submitted Indigent Care Package Request Forms and was approved

for the same on the following dates: "January 1, 9; February 12, 19, 27; March 3, 12, 18; April

23, 30; May 8, 13, 20; June 25; July 2, 8, 16, 23, 30; August 7, 20, 21; September 3, 9, 16, 25;

October 30; November 4, 12, 18, 25; and December 4, 9, 16, 23, 31." (Temple Decl. ¶ 35

(citation omitted).)  Additionally, in 2013, "Mr. Smith submitted Indigent Care Package Request Forms and was approved for such packages in 2013 on the following dates: January 6; and February 18 and 25."  (*Id.* ¶ 36 (citation omitted).)  Because Smith was found not to be indigent, on February 5, 2012, June 11 and 19, 2012, October 22, 2012, and January 13, 2013, the Jail denied his requests for an Indigent Care Package.  (*Id.* ¶ 37.)

For inmates confined to segregation, the Jail keeps records of, *inter alia*, showers, meals, whether their cells were cleaned, and whether the inmate required medical attention.  (Temple Decl. Ex. K.)[5]  Those records reflect that for the duration of his time in segregation, Smith showered nearly every day and his cell was regularly cleaned.  (*See id.* at 32–50.)

While at the Jail, Smith filed multiple grievances, but only three pertaining to his personal grooming or the cleanliness of his cell.  On August 22, 2012, Smith submitted a grievance wherein he complained that he was not released from his cell and needed to wash and shower.  (Temple Decl. ¶ 44.)  Lieutenant Robinson responded to Smith's grievance.  (*Id.* ¶ 45.) The Jail's records reflect that Smith showered on August 13, 14, 20, 21, and 23.  (Temple Decl. Ex. K, at 32–33.)  Smith refused a shower on August 17, 2012 and on August 22, 2012, he could not shower because the Jail was on lockdown.  (*Id.* at 33–34)

On January 31, 2013, Smith filed another grievance complaining that he had been denied a shower.  (Temple Decl. ¶ 54.)  The Jail's records reflect that Smith did not shower on January 31, 2013, but that he showered the six days preceding and following January 31, 2013.  (Temple Decl. Ex. K, at 47–48.)

On February 19, 2013, Smith filed a grievance wherein he complained that he could not obtain cleaning supplies for his cell.  (Temple Decl. ¶ 59 (citation omitted).)  The response to

---

[5] The Court employs the pagination assigned to these records by the Court's CM/ECF docketing system.

Smith's grievance reflects that on the following day he was provided cleaning supplies for cleaning his cell. (*Id.* ¶ 60 (citation omitted).)

> With respect to the cleaning of Smith's cell:
>
> While in segregation, Mr. Smith was given periodically a mop and mop bucket to assist in cleaning his cell, as well as a spray bottle containing cleaning fluid and a rag. If, for whatever reason, an inmate refused to clean his own cell, [the Jail] would be forced to clean it. For Smith, there are no records indicating that Smith refused to clean his cell over time, was not given cleaning supplies, or that his cell was dirty in any regards that required intervention.

(Temple Decl. ¶ 63.) Additionally, Lieutenant Temple regularly toured the Jail and from his "observations, there was nothing unclean, unkempt, or dirty in Smith's cells during the time he was in the different segregation cells." (*Id.* ¶ 65.) Additionally, "Smith never complained to [Lieutenant Smith] personally, nor did any staff bring to [Lieutenant Temple's] attention any cleanliness issues related to Smith's cells while he was in segregation." (*Id.*)

> The Jail's
>
> medical department conducts weekly medical reviews of inmates in segregation. Someone meets with the inmate and checks his vitals and asks if the inmate has any health issues to report. The information is recorded in a log. [The Jail's] medical department also conducts medical reviews at least every fifteen days of inmates in segregation.

(Justice Decl. ¶ 12.) During the above described medical evaluations, Smith never complained of "any health problems from showering, lack of showering, hygiene, or the cleanliness of his cell. Mr. Smith never demonstrated or showed symptoms of suffering from any health issues related from showering, lack of showering, hygiene, or the cleanliness of his cell." (*Id.* ¶ 24.)

Major Pegram is third in command at the Jail and approximately forty-five Officers, Corporals, Sergeants, Lieutenants, and a Captain report to her. (Pegram Decl. ¶¶ 6–7.) Inmates at the Jail "interact on a day-to-day basis with the front line jail employees such as Officers, Corporals, Sergeants, and Lieutenants." (*Id.* ¶ 9.) Major Pegram never was personally involved

7

with providing Smith showers, medical care, cleaning supplies or personal hygiene items. (*Id.* ¶ 11.) Major Pegram "never ordered anyone to deny Smith a shower, cleaning supplies, or hygiene kits." (*Id.*)

## IV.   ANALYSIS

To survive summary judgment on an Eighth Amendment claim, an inmate must demonstrate that "'the prison official acted with a sufficiently culpable state of mind (subjective component) and . . . the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component).'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991)). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

When an inmate challenges his conditions of confinement, he must show "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) (internal citation omitted) (citing *Wilson*, 501 U.S. at 301–03). Under the objective prong for an Eighth Amendment claim challenging the conditions of his or her confinement, the inmate must demonstrate that the deprivation complained of was extreme and amounted to more than the "'routine discomfort'" that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting *Hudson*, 503 U.S. at 9). The resulting harm to the inmate is particularly pertinent in assessing whether a

8

distasteful condition was sufficiently extreme to constitute an unconstitutional infliction of punishment. *Id.* at 1381. Thus, "[i]f a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the [Eighth] Amendment." *Id.* at 1381.

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his or her person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837; *Rich v. Bruce*, 129 F.3d 336, 340 (4th Cir. 1997)). Thus, to survive a motion for summary judgment, the deliberate indifference standard requires a plaintiff to demonstrate that "the official in question subjectively recognized a substantial risk of harm" and "that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2). As explained below, Smith fails to satisfy either the objective or subjective prongs for his alleged Eighth Amendment claims.

Smith alleges that his Eighth Amendment rights were violated because he was: (1) denied access to showers;  (2) confined to a filthy cell without access to cleaning supplies; and (3) denied the ability to brush his teeth.  Smith further alleges the foregoing conditions made him "very sick." (Compl. 5.)  The evidence flatly refutes all of these allegations.  During his incarceration, Smith had regular access to water and showers and showered on almost a daily basis.  Furthermore, no evidence exists that Smith's cell was dirty or that he was denied the ability to clean his cell.  Rather, the record reflects that Smith's cell was generally cleaned and Jail officials promptly responded to Smith's request for cleaning supplies or other items to maintain his personal hygiene.  Indeed, between January of 2012 and Smith's departure from the Jail in March of 2013, the Jail provided Smith with, *inter alia*, 39 bars of soap, 39 containers of shampoo, 39 toothbrushes, and 39 tubes of toothpaste.  Additionally, the record refutes Smith's allegation that he sustained any injury, much less a serious or significant injury, because of the conditions of his confinement. *See Strickler*, 989 F.2d at 1381.  Thus, Smith's fails to demonstrate that, objectively, he was exposed to conditions that violated the Eighth Amendment.

Furthermore, the records refutes that Major Pegram actually knew of and disregarded a substantial risk of serious harm to Smith. *See Farmer*, 511 U.S. at 837.  Rather, the evidence reflects that Smith faced no risk of serious harm from the conditions of his confinement at the Jail.  Because Smith fails to satisfy the objective and subjective components, his Eighth Amendment claim will be DISMISSED.  The Motion for Summary Judgment (ECF No. 23) will be GRANTED.  The action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

Date: /0-26-15
Richmond, Virginia

/s/
James R. Spencer
Senior U. S. District Judge